IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Todd M. Brown, ) | |
| ) | Civil Action No. 6:13-1036-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security granting benefits starting October 26, 2010, but denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act before that date.

**ADMINISTRATIVE PROCEEDINGS**

On July 18, 2008, an administrative law judge ("ALJ") rendered an unfavorable decision on the plaintiff's prior claim for disability and disability insurance benefits. The plaintiff did not appeal this denial. As a result, the theory of *res judicata* applies to the time period of January 19, 2006, the alleged onset date, to July 18, 2008. On April 30, 2010, the

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits alleging that he became unable to work on January 19, 2006. The applications were denied initially and on reconsideration by the Social Security Administration. On March 7, 2011, the plaintiff requested a hearing. The ALJ, before whom the plaintiff and Feryal Jubran, an impartial vocational expert, appeared on October 5, 2011, considered the case *de novo* and, on November 7, 2011, issued a partially favorable decision granting benefits beginning October 26, 2010, but denying benefits before that date (Tr. 91-100). The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on February 20, 2013. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff was not entitled to benefits prior to October 26, 2010, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.
>
> (2)     The claimant has not engaged in substantial gainful activity since July 18, 2008 (20 C.F.R §§ 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3)     Since July 18, 2008, the claimant has had the following severe impairments: morbid obesity; and lumbar radiculopathy with chronic regional pain syndrome of the right lower extremity. Since the established onset date of disability, October 26, 2010, the claimant has also had the following severe impairments: residuals of left biceps tendon rupture; peripheral vascular disease with cyanosis of bilateral feet; and substance abuse disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> (4)     Since July 19, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that from July 19, 2008, to October 26, 2010, the date the claimant became disabled, the claimant had the

residual functional capacity to perform the full range of light[3] work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

(6)     After careful consideration of the entire record, the undersigned finds that since October 26, 2010, the claimant had the residual functional capacity to perform less than the full range of sedentary[4] work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following additional limitations: occasional use of his bilateral lower extremities; occasional climbing of stairs and ramps; never climbing ladders; occasional balancing with an assistive device; occasional stooping, kneeling, and crawling; avoiding heights, hazardous machines, and dust; and being off task 1/3 of the day due to pain symptoms.

(7)     Since January 19, 2006, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(8)     Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(9)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(10)    Prior to October 26, 2010, transferability of job skills is not material to the determination of disability because applying the Medical Vocational Rules directly supports a finding of "not disabled" whether or not the claimant has transferable job skills to other occupations (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P. Appendix 2).

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] "Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of working and standing is often necessary in carrying out job duties. Jobs are sedentary if sitting is required for six hours and walking and standing are required for two hours." 20 C.F.R. §§ 404.1567(a), 416.967(a).

(11)  Prior to October 26, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

(12)  Beginning on October 26, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960, and 416.966)

(13)  The claimant was not disabled prior to October 26, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(14)  The claimant's substance use disorder is not a contributing factor material to the determination of disability (20 C.F.R. §§ 404.1535 and 416.935).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged

4

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith*

*v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was injured in January 2006 when he fell down a flight of steps while installing countertops (Tr. 42).  He saw neurologist Dr. Michael McCaffrey from March 2006 through August 2007 for back and leg pain (Tr. 355–90).  The plaintiff saw Dr. Jason Rosenberg in April and May 2007 for pain management (Tr. 307–318).  The plaintiff did not see any treating sources again until 2010.  In October 2010, the plaintiff returned to Dr. McCaffrey, reporting worsening back and leg pain (Tr. 391-94, 396-98).  He also began visiting the Veterans Administration hospital for back and leg pain (Tr. 491).

In a July 2010 state disability consultative exam, Dr. Asbury Williams found the plaintiff had torn biceps muscle in the left arm, muscle spasms in the upper back, peripheral vascular disease with cyanosis in both feet, and abdominal ascites.  An x-ray of the plaintiff's thoracic spine revealed osteoporosis and arthritis (Tr. 333–34).  In late 2010 state disability reviews, Drs. Joseph Gonzalez and Mary Lang both opined the plaintiff could do light work with certain postural restrictions (Tr. 343–50, 483–90).

In a physician's statement dated October 26, 2010, Dr. McCaffrey limited the plaintiff to lifting ten pounds and sitting, standing, and walking for "0 maximum hours" in an eight hour day, noting that the plaintiff was unable to work due to chronic regional pain syndrome, chronic lumbar radiculopathy, and obesity (Tr. 396-98). In a letter dated November 14, 2010, Dr. McCaffrey stated that the plaintiff was last seen in his office on October 26, 2010, and he was restarted on pain medication at that time. He stated that the plaintiff suffered a lumbar radiculopathy in the accident in January 2006, and he went on to develop chronic regional pain syndrome of the right leg. He opined that the plaintiff "was unable to work at present secondary to his chronic regional pain syndrome of his right lower extremity and carries a 25% impairment of the whole person as outlined in previous letters dictated to this patient" (Tr. 402).

The plaintiff testified he suffered severe back, shoulder, and leg pain (Tr. 39). He said his pain medications caused dizziness and nausea (Tr. 41–42). The plaintiff also testified his daily activities were very limited and he had difficulty walking, standing, and lifting (Tr. 44, 49–51, 53–54, 57–60).

## ANALYSIS

The plaintiff was born on March 7, 1968, and he was 43 years old on the date the ALJ issued her decision. He has a high school education (Tr. 333). The plaintiff argues that the ALJ erred by (1) misapplying the treating physician rule with regard to treating physician Dr. McCaffrey; and (2) failing to properly assess his credibility.

*Treating physician*

The regulations require that all medical opinions in a case be considered, 20 C.F.R. §§ 404.1527(b), 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with

which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

The ALJ found the plaintiff disabled as of October 26, 2010, the date of the plaintiff's first visit with Dr. McCaffrey since August 2007 (Tr. 402). The ALJ considered Dr. McCaffrey's opinion and noted that the plaintiff did not see Dr. McCaffrey from July 2008[5]

---

[5] The undersigned's review of the record indicates that the plaintiff's last visit with Dr. McCaffrey prior to his October 2010 visit was on August 7, 2007, at which time Dr. McCaffrey stated that the plaintiff would "remain on light duty" (Tr. 366-67). The ALJ apparently referenced July 2008

8

until October 2010 (Tr. 97). The ALJ found that as of October 26, 2010, the plaintiff's overall condition worsened, reducing his residual functional capacity to less than the full range of sedentary work (Tr. 98). The ALJ cited the plaintiff's treatment by Dr. McCaffrey on that date, and Dr. McCaffrey's opinion that the plaintiff was limited to lifting ten pounds and sitting, standing, and walking for 0 hours in an eight hour day, and was unable to work due to chronic regional pain syndrome, chronic lumbar radiculopathy, and obesity (Tr. 98 (citing Tr. 396-98)). The ALJ also noted that the plaintiff's family doctor, Dr. Dennis Rhoades, indicated in February and September 2011 that the plaintiff was unable to work due to the effects of chronic regional pain syndrome (Tr. 98 (citing Tr. 482, 565-66)), and one of the plaintiff's Veteran's Administration doctors opined in June 2011 that the plaintiff was totally disabled and unable to perform gainful activity (Tr. 98 (citing Tr. 519-20)).

The plaintiff argues that the ALJ's utilization of the October 26, 2010, onset of disability date is unsupported as Dr. McCaffrey believed well before that time that the plaintiff was disabled (pl. brief at 2-3). The "previous letters dictated to this patient" referenced in Dr. McCaffrey's November 2010 opinion apparently refer to letters written in 2006[6] in which Dr. McCaffrey opined that the plaintiff had an impairment rating of 25% of the whole person, would need to remain on oxycodone and Lyrica for the rest of his life, and would not be "employable at present or in the near future" (Tr. 387, 389). The plaintiff argues that because Dr. McCaffrey placed the plaintiff at maximum medical improvement in October 2006 (Tr. 389), the ALJ should have found the plaintiff disabled as of July 19, 2008, the day after the unfavorable decision on the plaintiff's previous disability claim.

---

because the period prior to July 19, 2008, was not at issue based upon the unfavorable decision on the plaintiff's prior disability claim.

[6] The letters are addressed to the nurse case manager employed by the workers' compensation carrier (Tr. 387) and a law firm (Tr. 389).

9

As argued by the Commissioner, Dr. McCaffrey was not a treating source during the more than three years that he did not see the plaintiff, and thus his opinion was due no special deference for that period (def. brief at 6). The regulations consider one appointment every six months to be a "long interval" that "may" maintain the relationship for purposes of the treating source rule "if the nature and frequency of the treatment or evaluation is typical for [the] condition(s)." 20 C.F.R. §§ 404.1502, 416.902. Furthermore, even assuming that Dr. McCaffrey was a "treating source" before October 2010, the ALJ correctly noted there was no clinical evidence whatsoever in the record from the date of the unfavorable decision on the plaintiff's previous claim in July 2008 until March 2010[7] (Tr. 97–98). The ALJ also noted that at a July 2010 consultative examination, the plaintiff told Dr. Asbury Williams that he was taking no medications and seeing no doctors (Tr. 97 (citing Tr. 333)). Accordingly, any opinion by Dr. McCaffrey for the period between July 2008 and October 2010 would be based solely on the plaintiff's self-reported history. Thus, Dr. McCaffrey's opinion as to the plaintiff's condition prior to October 2010 was not supported by clinical evidence for that period, and so "it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 4th Cir. 1996.

Based upon the foregoing, this allegation of error is without merit.

*Credibility*

The plaintiff next argues that the ALJ erred in finding that his allegations were not fully credible prior to October 26, 2010 (pl. brief at 3-4; *see* Tr. 97). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical

---

[7] In March and April 2010, the plaintiff visited Caroline Health Specialists for acute rectal bleeding, which subsided a short time later (Tr. 322-29).

10

> impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

> The court further acknowledged:
>
> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id.* at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as

11

to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

    (1)    the individual's daily activities;

    (2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

    (3)    factors that precipitate and aggravate the symptoms;

    (4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible prior to October 26, 2010 (Tr. 97). The ALJ correctly noted that the plaintiff sought no treatment from July 2008 until October 2010, except for his treatment for acute rectal bleeding in March and April 2010 (Tr. 322-29), and he did not take prescription medications during that time (Tr. 97). Failure to seek treatment is probative in a credibility analysis. *Mickles v. Shalala*, 29 F.3d 918, 929-30 (4th Cir. 1994).

The plaintiff now argues that he did not seek treatment due to lack of money (pl. brief at 3). As the Fourth Circuit stated in *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984), "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." It is well settled that a claimant for Social Security benefits should not be "penalized for failing to seek treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Social Security Ruling ("SSR") 96-7P expressly addresses the situation where a claimant asserts that he has not pursued medical treatment because of a lack of financial resources. *See* SSR 96-7P, 1996 WL 374186. In such a situation, the fact finder is admonished from drawing "any inferences about an individual's symptoms and their functional effects" from a failure to pursue medical treatment "without first considering any

explanations that the individual may provide . . . ." *Id*. at *7. However, the plaintiff points to no testimony or other evidence in the record before the ALJ that he did not seek additional treatment due to his financial condition. *See Miller v. Colvin*, C.A. No. 4:13-cv-914-DCN, 2014 WL 2112696, at *6 (D.S.C. May 20, 2014) (finding ALJ did not err in considering the plaintiff's lack of treatment in assessing her credibility because there was no testimony or other evidence that she could not afford treatment). Thus, the ALJ permissibly drew a negative inference.

Based upon the foregoing, this allegation of error is without merit.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

                                                      s/ Kevin F. McDonald  
                                                      United States Magistrate Judge

June 6, 2014  
Greenville, South Carolina